# In the United States Court of Federal Claims

No. 11-453C

(Filed: June 18, 2012)

*****************************************  *
                                          *
                                          *   Non-Appropriated Funds Activity;
SUFI NETWORK SERVICES, INC.,              *   Recovery of Legal Costs; Whether
                                          *   to Afford Preclusive Effect to
                                          *   ASBCA Decisions; Review of
            Plaintiff,                    *   FAR §§ 33.205-33, 33.205-47;
                                          *   Federal Circuit's <u>Bill Strong</u>
v.                                        *   Decision; Distinction Between
                                          *   Claim Prosecution Costs and
THE UNITED STATES,                        *   Contract Administration Costs;
                                          *   Application of FAR to NAFI
            Defendant.                    *   Contract.
                                          *
*****************************************  *

*Frederick W. Claybrook, Jr.*, with whom was *Brian T. McLaughlin*, Crowell & Moring LLP, Washington, D.C., for Plaintiff.

*Douglas T. Hoffman*, with whom were *Stuart F. Delery*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Steven J. Gillingham*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

This case is before the Court on the parties' cross-motions for summary judgment on liability. Plaintiff, SUFI Network Services, Inc. ("SUFI") is seeking the recovery of attorneys' fees, expenses, and interest that it incurred following the Government's material breach of a contract for telephone services performed in Germany. The contract involves an Air Force non-appropriated funds instrumentality in which neither the Contract Disputes Act ("CDA") nor the Federal Acquisition Regulation ("FAR") applies. Due to the lack of other authority, the Court still must examine whether SUFI's legal costs are unallowable if incurred in connection with "the prosecution of claims or appeals against the Federal Government." FAR § 33.205-47(f)(1). The Court also must review

the Federal Circuit's decision in <u>Bill Strong Enterprises, Inc. v. Shannon</u>, 49 F.3d 1541 (Fed. Cir. 1995), <u>overruled in part on other grounds by</u> <u>Reflectone, Inc. v. Dalton</u>, 60 F.3d 1572, 1579 n.10 (Fed. Cir. 1995) (en banc).  The <u>Bill Strong</u> case remains the leading authority on the allowance of legal costs in government contracts.

For the reasons explained below, the Court concludes that SUFI's legal costs are not precluded by any FAR cost principle or the <u>Bill Strong</u> decision, and constitute costs eligible for recovery by equitable adjustment under the contract's "Changes" clause.  The Court therefore grants SUFI's February 13, 2012 motion for summary judgment and denies the Government's March 15, 2012 cross-motion for summary judgment.

The parties each argued in their cross-motions that the decision of the Armed Services Board of Contract Appeals ("ASBCA") on attorneys' fees, <u>SUFI Network Services, Inc.</u>, ASBCA No. 55306, 09-1 BCA ¶ 34018 (Nov. 21, 2008) ("SUFI ASBCA VIII"), had a preclusive effect requiring a ruling in their favor.  The Court finds the ASBCA's decision inconclusive on the issue of attorneys' fees, and cannot say that the Board ever clearly ruled on this issue.  Accordingly, the Court grants summary judgment for SUFI, but on a different basis than SUFI argued in its motion.

Background[1]

The Court provided a more detailed factual background and procedural history of this dispute in its January 17, 2012 opinion denying the Government's motion to dismiss.  <u>See</u> <u>SUFI CFC I</u>, 102 Fed. Cl. at 658-60.  The facts below relate only to the merits of SUFI's claim for attorneys' fees, expenses, and interest.

    1.  <u>The Contract</u>

SUFI and the U.S. Air Force Non-Appropriated Funds Purchasing Office ("AFNAFPO") entered into a contract on April 26, 1996 for SUFI to install and operate telecommunications systems on Air Force bases in Germany.  <u>SUFI ASBCA VIII</u>, 09-1

---

[1]  In addition to this case (No. 11-453C), another case involving the same parties and operative facts is pending before the Court (No. 11-804C).  Presently, the parties are briefing cross-motions for judgment on the administrative record in case No. 11-804C.  The Court issued a published opinion on January 17, 2012, in which it denied the Government's motion to dismiss this case.  <u>See</u> <u>SUFI Network Servs., Inc. v. United States</u>, 102 Fed. Cl. 656 (2012).  In that opinion, the Court referred to this case as "<u>SUFI CFC I</u>" and to case No. 11-804C as "<u>SUFI CFC II</u>."  <u>See</u> <u>id.</u> at 658 n.1.  However, given the possibility of subsequent opinions in this case on damages and in case No. 11-804C on the parties' cross-motions, the Court believes it is sensible to adopt a revised convention for naming the different cases.  Accordingly, the Court hereinafter will refer to its January 17, 2012 opinion as "<u>SUFI CFC I</u>" and to this opinion as "<u>SUFI CFC II</u>."  Later opinions will be numbered in sequence.  The Court will continue to use the naming convention established in its January 17, 2012 opinion to refer to the eleven reported decisions of the ASBCA.  <u>See</u> <u>id.</u> at 658 n.3 ("For clarity, the Court refers to the ASBCA decisions as '<u>SUFI ASBCA I</u>' and '<u>SUFI ASBCA II</u>,' in sequence through '<u>SUFI ASBCA XI</u>.'").

2

BCA ¶ 34,018, at 168,217-18 ¶ 1 (Nov. 21, 2008).  The AFNAFPO materially breached this contract.  See generally SUFI ASBCA II, 04-2 BCA ¶ 32,714 (Aug. 17, 2004).

Neither the CDA, 41 U.S.C. §§ 601-13 (2006) (current version at 41 U.S.C. §§ 7101-09), nor the FAR applies to this contract.  Compl. (Jul. 8, 2011), at 1 ¶ 2.[2] However, the contract incorporates by reference the standard FAR "Changes" clause:

> If any . . . change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract . . . the Contracting Officer shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.

FAR § 52.243-1(b) (2011); see also SUFI ASBCA VIII, at 168,218 ¶ 2.

## 2.  SUFI's Monetary and Employee Claims

On August 25, 2004, SUFI notified the AFNAFPO's contracting officer ("CO") that it intended to cancel the contract as a result of the AFNAFPO's material breach. SUFI ASBCA VIII, at 168,218 ¶ 6.  The parties reached a Partial Settlement Agreement ("PSA") on May 31, 2005, with an effective date of April 1, 2005, pursuant to which SUFI stopped its work under the contract.  Id. at 168,218-19 ¶ 7; see also Pl.'s Mem. (Mar. 29, 2012), at 11; Def.'s Mem. (Mar. 15, 2012), at 11 ¶¶ 13-14.  SUFI submitted 28 monetary claims to the CO on July 1, 2005, under both the contract and the PSA.  Id. at 168,219 ¶ 8.

After the CO failed to issue a final decision for more than six months, the Board docketed SUFI's appeal as a "deemed denial" on January 5, 2006.  Id. at 168,217.  The CO subsequently denied all but one of SUFI's 28 monetary claims.  Id. at 168,219 ¶ 9. SUFI then amended its complaint to appeal the CO's final decision.  Pl.'s Mem. (Mar. 29, 2012), at 11; Def.'s Mem. (Mar. 15, 2012), at 11 ¶ 16.  On October 13, 2006, the parties executed an agreement (the "October 2006 Agreement") settling ten of SUFI's monetary claims.  See SUFI ASBCA VIII, at 168,219-21 ¶¶ 13-18.  The Board, however, determined that this agreement was unenforceable.  See id. at 168,221-22.

SUFI ultimately recovered on 22 of its 28 monetary claims.  See generally SUFI ASBCA VIII, 09-1 BCA ¶ 34,018 (Nov. 21, 2008), recons. granted in part, SUFI ASBCA IX, 09-2 BCA ¶ 34,201 (Jul. 15, 2009), SUFI ASBCA X, 10-1 BCA ¶ 34,327 (Dec. 14,

---

[2]  The FAR does not apply to a government contract with a non-appropriated funds instrumentality ("NAFI").  See FAR § 1.104 (2011) ("The FAR applies to all acquisitions as defined in Part 2 of the FAR, except where expressly excluded."); FAR § 2.101 (2011) ("Acquisition means the acquiring by contract with appropriated funds of supplies or services.").

2009), and <u>SUFI ASBCA XI</u>, 10-1 BCA ¶ 34,415 (Apr. 5, 2010).[3]  The Board awarded
SUFI damages, as well as the costs and expenses of SUFI's employees and non-legal
consultants incurred as a result of the AFNAFPO's material breach.  <u>See</u> <u>SUFI ASBCA</u>
<u>VIII</u>, at 168,289-92.

At the time of the Board's decision on SUFI's 28 monetary claims in <u>SUFI</u>
<u>ASBCA VIII</u>, SUFI had not yet presented the CO with its claim for attorneys' fees and
expenses.  Def.'s Mem. (Mar. 15, 2012), at 8; Pl.'s Mem. (Feb. 13, 2012), at 4 ¶ 7.[4]
Nevertheless, the Board observed:

> Since [counsel] undertook to represent SUFI in its claim
> preparation and in this litigation on a one-third contingency basis
> (finding 340) . . . we need not rule on the allowability of their
> legal fees and expenses.  Once this decision is promulgated,
> [counsel] presumably will be compensated based upon their
> contingent fee arrangement with SUFI.

<u>SUFI ASBCA VIII</u>, at 168,289.  Additionally, the Board noted that FAR § 31.205-33(b)
(2011) does not govern the parties' non-appropriated funds contract but is "useful in the
absence of other guidance."  <u>Id.</u>

### 3.  SUFI's Fee Claim

SUFI submitted its attorneys' fees claim to the CO on December 29, 2010.  <u>SUFI</u>
<u>CFC I</u>, 102 Fed. Cl. at 659 (internal citations omitted).  In its submission, SUFI "itemized
attorneys' fees of $663,131.25 and expenses of $21,576.30, plus interest through the last
full month prior to the claim's submission."  Pl.'s Mem. (Feb. 13, 2012), at 4 ¶ 9.  SUFI
also "attached supporting documentation and affidavits."  <u>Id.</u>  However, the CO again
failed to issue a final decision for more than six months.  <u>See</u> <u>SUFI CFC I</u>, 102 Fed. Cl. at
662.  On July 8, 2011, SUFI brought its attorneys' fees claim in this Court, including
claims for interest and fees relating to the instant action.  The Government moved to
dismiss for failure to exhaust administrative remedies, but the Court denied the
Government's motion on January 17, 2012.

---

[3]  In case No. 11-804C, SUFI seeks this Court's review of the ASBCA's rulings on twelve of its monetary
claims, largely concerning the amount of damages that the Board awarded.  <u>See</u> Compl. (Nov. 30, 2011),
at 6-7 ¶¶ 22-23.

[4]  The Board limited SUFI's recovery on its employee claim only to those costs corresponding to SUFI's
22 successful monetary claims.  <u>See</u> <u>SUFI ASBCA VIII</u>, at 168,290-91.  This Court defers any analogous
determination on SUFI's attorneys' fees for subsequent proceedings on damages.

4.  The Instant Dispute

On February 13, 2012, SUFI moved for summary judgment on both liability and damages, pursuant to Court Rule ("RCFC") 56.  The Government cross-moved for summary judgment on March 15, 2012.  By order dated February 17, 2012, the Court stayed the issue of damages pending this decision on liability.

In their respective cross-motions, each party asserts preclusion arguments pertaining to the Board's decision in SUFI ASBCA VIII.  SUFI contends that the Board ruled for it on liability but deferred ruling on damages. Pl.'s Mem. (Mar. 29, 2012), at 4. In contrast, the Government contends the Board found that (i) "where a party enters into a contingent fee arrangement such fees are not compensable," Def.'s Mem. (Mar. 15, 2012), at 16; and (ii) therefore, a ruling on damages was "just gratuitous," Def.'s Mem. (Apr. 9, 2012), at 2-3 n.1.

SUFI asserts entitlement to its attorneys' fees (i) as damages under the contract and PSA, see Compl. (Jul. 8, 2011), at 4 ¶¶ 19-22; and (ii) in the alternative, as an equitable adjustment under the Changes clause, see id. at 5 ¶¶ 23-25.[5]  In turn, the Government challenges SUFI's attorneys' fees claim as unallowable under FAR § 31.205-47(f)(1) (2011) (previous version at FAR § 31.205-33(d)), due to SUFI's eventual prosecution of its monetary claims before the Board.  See Def.'s Mem. (Apr. 9, 2012), at 5-6; Def.'s Mem. (Mar. 15, 2012), at 18-23.

For the reasons explained below, the Court rejects both parties' preclusion arguments because the ASBCA never clearly decided the attorneys' fees issue. Nonetheless, upon de novo review, the Court grants SUFI's motion for summary judgment on liability and denies the Government's cross-motion.  The Court need not address SUFI's first theory of entitlement because there is no genuine dispute that SUFI is entitled to its attorneys' fees claim as an equitable adjustment under the Changes clause of the contract.

Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a); see also Arko Exec. Servs., Inc. v. United States, 553 F.3d 1375, 1378 (Fed. Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)).  By contrast, summary judgment is not appropriate where "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248. In reviewing a motion for summary judgment, the benefit of all factual inferences runs in

---

[5]  The Government agreed in the PSA to pay interest on any subsequent monetary claims that SUFI brought under the contract.  SUFI CFC I, 102 Fed. Cl. at 659 (internal citation omitted).

favor of the non-moving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962) (per curiam). "However, bald assertions and speculation do not create an evidentiary conflict sufficient to defeat a summary judgment motion." <u>Lathan Co. v. United States</u>, 20 Cl. Ct. 122, 125 (1990) (citing <u>Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.</u>, 731 F.2d 831, 836 (Fed. Cir. 1984)). The plain language of RCFC 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

Discussion

A. <u>Both Parties' Preclusion Arguments Are Unavailing.</u>

"Normally, a final judgment in one court is binding on the same parties in a subsequent action before another court as a matter of res judicata; in such a setting the first judgment ordinarily cannot be collaterally challenged in the second proceeding." <u>Neb. Pub. Power Dist. v. United States</u>, 590 F.3d 1357, 1363 (Fed. Cir. 2010) (en banc). This rule of preclusion, grounded in principles of comity, extends to the judgments of the ASBCA. <u>See</u> <u>United States v. Utah Constr. & Mining Co.</u>, 384 U.S. 394, 418-22 (1966), <u>superseded by statute on other grounds</u>, CDA, 41 U.S.C. §§ 601-13 (2006) (current version at 41 U.S.C. §§ 7101-09), <u>as recognized in</u>, <u>Alliant Techsys., Inc. v. United States</u>, 186 F.3d 1379 (Fed. Cir. 1999) (per curiam). Nevertheless, "[p]recedent cautions that res judicata is not readily extended to claims that were not before the court, and precedent weighs heavily against denying litigants a day in court unless there is a clear and persuasive basis for that denial." <u>Kearns v. Gen. Motors Corp.</u>, 94 F.3d 1553, 1557 (Fed. Cir. 1996).

Here, the Government argues that the Board in <u>SUFI ASBCA VIII</u> expressly referenced FAR § 31.205-33(b), which purportedly prohibits the award of *any* legal fees to a litigant represented on a contingent fee basis. <u>See</u> Def.'s Mem. (Apr. 9, 2012), at 2-3 n.1; Def.'s Mem. (Mar. 15, 2012), at 16. The Court cannot abide this sweeping characterization and, in any event, will not give it preclusive effect in light of the Board's explicit "we need not rule" language. <u>SUFI ASBCA VIII</u>, at 168,289.

SUFI's preclusion argument similarly fails. <u>See</u> Pl.'s Mem. (Mar. 29, 2012), at 4. While the Board did grant SUFI's non-legal employees cost claim, it specifically stated "we need not rule" as to SUFI's attorneys' fees claim. <u>SUFI ASBCA VIII</u>, at 168,289. Furthermore, the Board expressly referenced both (i) "finding 340," which documented SUFI's contingency fee arrangement; and (ii) FAR § 31.205-33(b), which at least limits a plaintiff's recovery of contingency fees against the Government. <u>See</u> <u>id.</u> Mindful that SUFI did not even submit a claim for attorneys' fees to the CO until December 29, 2010,

the Court holds that the Board could not and did not rule conclusively in November 2008 as to SUFI's attorneys' fees claim.  Accordingly, the Court proceeds to the substance of the contingency fee issue.

B. <u>The Court May Award Attorneys' Fees Where Counsel Represents a Party Against the Government on a Contingency Basis.</u>

"Costs of professional and consultant services are allowable . . . when reasonable in relation to the services rendered and when not contingent upon recovery of the costs from the Government."  FAR § 31.205-33(b).  Here, the Government urges the Court to apply this contingent fee restriction as an absolute bar and, therefore, to deny SUFI's attorneys' fees claim irrespective of its merits.  The Court does not accept the Government's position.

First and foremost, the FAR and its cost principles provide only guidance here; they do not control the parties' non-appropriated funds contract.  <u>See</u> FAR §§ 1.104, 2.101 (2011).  However, even if the FAR were controlling, SUFI's contingent fee arrangement with outside counsel would "not preclude the award of reasonable attorney's fees." <u>E.C. Schleyer Pump Co., Inc.</u>, ASBCA No. 33900, 89-1 BCA ¶ 21,194, at 106,958 (Sep. 6, 1988).  After all, SUFI is "a small company" that "no longer had a revenue stream" after the AFNAFPO's material breach.  Pl.'s Mem. (Feb. 13, 2012), at 10.  Given SUFI's "limited ability to fund expensive and protracted litigation" with the Government, a ruling against an attorneys' fees award would be manifestly unjust.  <u>See</u> <u>E.C. Schleyer</u>, at 106,958.

The better interpretation of FAR § 31.205-33(b) is that it merely provides guidance as to fee recovery, setting attorneys' fees at "the 'lodestar' amount of the hours worked at the normal hourly rate."  Pl.'s Mem. (Feb. 13, 2012), at 4; <u>cf.</u> <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 93 (1989) (allowing for an award of reasonable fees, despite a contingency fee arrangement, in the context of the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988 (2006)).  While FAR § 31.205-33(b) may preclude the payment of attorneys' fees as a percentage of recovery against the Government, that cost principle does not prevent the payment of fees calculated on an hourly basis at reasonable hourly rates.  Even if outside counsel provided services to a client on a contingency basis, counsel and the represented party still may recover fees if they are claimed on an hourly basis rather than a contingency basis.  Thus, SUFI's contingency fee arrangement with counsel poses no obstacle to it prevailing on the merits of its attorneys' fees claim.

C. SUFI's Fee Claim Is Compensable As an Equitable Adjustment Under the Contract's Changes Clause, Despite SUFI's Eventual Appeal of Its Monetary Claims to the ASBCA.

When a contractor incurs costs due to (i) formal or constructive changes to the contract; (ii) governmental defect or delay; or (iii) the Government's breach, the contractor is entitled to request an equitable adjustment ("REA"). See Michael W. Clancy, REA Preparation Costs—Bill Strong Enterprises, Inc. v. Shannon, 25 Pub. Cont. L.J. 537, 582 (1996) (internal footnotes omitted). An "equitable adjustment" is an adjustment to a contract's price or schedule under a Changes clause to compensate a contractor for adverse governmental action. See 4 John Cosgrove McBride & Thomas J. Touhey, Government Contracts: Law, Administration, Procedure § 28.280 (Walter Wilson ed., Matthew Bender 2009). REA preparation "normally requires a substantial effort, including contract analysis, factual investigation, legal entitlement analysis, the drafting process, the collection of documentary evidence, and the pricing of the equitable adjustment." Clancy, supra, at 582 (internal footnote omitted). Nonetheless, "[c]osts . . . are unallowable if incurred in connection with . . . the prosecution of claims or appeals against the Federal Government." FAR § 33.205-47(f)(1).

Here, the AFNAFPO materially breached the parties' contract, plausibly entitling SUFI to an equitable adjustment under the Changes clause. However, SUFI ultimately appealed its 28 monetary claims to the ASBCA, recovering on 22 of them.

Thus, at issue is whether SUFI's attorneys' fees claim is itself allowable as an equitable adjustment, or unallowable as costs incurred in connection with the prosecution of SUFI's monetary claims against the Government.[6] There is no single legal rule to answer this question. Therefore, the Court undertakes a two-step inquiry: (i) a per se review for costs that are unallowable under FAR § 33.205-47(f)(1); and (ii) a more robust analysis to distinguish between compensable "contract administration" costs and non-

---

[6] "A material breach does not automatically and ipso facto end a contract. It merely gives the injured party the right to end the agreement; the injured party can choose between canceling the contract and continuing it." Cities Serv. Helex, Inc. v. United States, 543 F.2d 1306, 1313 (Ct. Cl. 1976) (en banc) (internal footnote omitted). "As a general proposition, one side cannot continue after a material breach by the other . . . run up damages, and then go suddenly to court." N. Helex Co. v. United States, 455 F.2d 546, 551 (Ct. Cl. 1972). The Government cites to Cities Service Helex and Northern Helex and, in effect, argues that SUFI waived its rights under the Changes clause due to its cancellation of the contract. Def.'s Mem. (Apr. 9, 2012), at 7; Def.'s Mem. (Mar. 15, 2012), at 23-24. As applied to the present case, however, those precedents are inapposite. For example, unlike the Department of the Interior in Cities Service Helex, the AFNAFPO did not detrimentally rely upon SUFI's apparent continued performance. In the absence of such detrimental reliance, the Government cannot maintain that because it materially breached its substantive obligations to SUFI under the contract, it can breach its procedural obligations to SUFI under the Changes clause. After all, contract cancellation by one party is a natural outgrowth of material breach by its counterparty, even if not a guaranteed consequence. SUFI's cancellation of the contract does not deprive it of procedural rights under the contract relating to events that took place before cancellation, to the extent those events affected its substantive contractual rights.

compensable "claim prosecution" costs within the meaning of the seminal <u>Bill Strong</u> decision.  <u>See generally</u> 49 F.3d 1541 (Fed. Cir. 1995).

### 1. FAR § 33.205-47(f)(1)'s *Per Se* Bar Does Not Apply to SUFI's Attorneys' Fees Claim.

The title of FAR § 31.205-47 (2011) is "Costs related to legal and other proceedings."  The FAR limits the scope of "legal proceedings" to "any civil judicial proceeding to which the Government is a party or any criminal proceeding . . . includ[ing] appeals from such proceedings."  FAR § 9.403 (2011).  Therefore, FAR § 33.205-47(f)(1) does not bar the recovery of costs related to non-judicial administrative processes that pre-date a contractor's actual filing of its Board appeal, such as information exchanges at the contracting officer level.  <u>See</u> Clancy, *supra*, at 585-86.  Accordingly, there is no *per se* bar to SUFI's recovery of the costs that it incurred before January 5, 2006, the date SUFI appealed its monetary claims to the ASBCA.[7]

### 2. SUFI's Attorneys' Fees Claim Involves Compensable "Contract Administration" Costs Within the Meaning of *Bill Strong*.

In applying FAR § 33.205-47(f)(1), the Court distinguishes between allowable "contract administration" costs and unallowable "claim prosecution" costs by "examin[ing] the objective reason why the contractor incurred the cost."  <u>Bill Strong</u>, 49 F.3d at 1550.[8]  "If a contractor incurred the cost for the genuine purpose of materially furthering the negotiation process," and the cost otherwise is "reasonable and allocable," then the cost is presumptively allowable "even if negotiation eventually fails" and the contractor later submits a Board appeal.  <u>Id.</u> at 1549-50; <u>see also</u> FAR § 31.201-2 (2011).  "On the other hand, if a contractor's underlying purpose for incurring a cost is to promote the prosecution of" a Board appeal, then the cost is unallowable.  <u>Id.</u> at 1550.

There is no "bright-line test" rendering costs "automatically allowable just because those costs were incurred before" a Board appeal.  <u>Id.</u> at 1545.  The "Government must receive some benefit from the" expenditure of the costs in order for them to be allowable.  <u>Id.</u>  "In the practical environment of government contracts," this benefit may be an

---

[7]  The Court defers any determinations on SUFI's request for attorneys' fees and expenses relating to *this* action until the damages stage.

[8]  The <u>Bill Strong</u> court limited the scope of its interpretive ruling to the former FAR § 31.205-33(d).  <u>See</u> 49 F.3d at 1544 n.2.  In the instant opinion, the Court holds that <u>Bill Strong's</u> framework extends with equal force to FAR § 33.205-47(f)(1), a successor regulation which is substantively comparable to the former FAR § 31.205-33(d).

increase in "the likelihood of settlement without litigation" or, simply, "a greater incentive to negotiate rather than litigate." Id. at 1549-50.[9]

To summarize, at this liability stage of the proceedings, attorneys' fees and expenses incurred in preparation of an REA under a Changes clause are themselves presumptively compensable as an equitable adjustment where:

(i)     The contractor incurred the costs due to (a) formal or constructive changes to the contract, (b) governmental defect or delay, or (c) the Government's breach, see Clancy, supra, at 582 (internal footnotes omitted);[10]

(ii)    (a) The contractor incurred the costs in furtherance of information exchange or negotiation with the Government, whether or not it ultimately succeeded in forestalling a Board appeal, Bill Strong, 49 F.3d at 1549-50, or (b) the Government received some other benefit from the expenditure, id. at 1545; and

(iii)   Where applicable, the contractor incurred the costs before the actual filing of its Board appeal, FAR § 33.205-47(f)(1); see also FAR § 9.403 (2011); Clancy, supra, at 585-86.

Whether a contractor can satisfy this test for presumptive allowability, and whether the Government can rebut this presumption, normally are factual inquiries for the contracting officer. See United States v. Callahan Walker Constr. Co., 317 U.S. 56, 61 (1942). Here, however, the CO failed to make the necessary factual inquiries. See SUFI CFC I, 102 Fed. Cl. at 662. Therefore, the Court makes them itself.

SUFI easily satisfies this test for presumptive compensation on liability. In this regard, SUFI already prevailed under Bill Strong on its analogous employee claim. See SUFI ASBCA VIII, at 168,289-92; Pl.'s Mem. (Mar. 29, 2012), at 11; Def.'s Mem. (Mar. 15, 2012), at 13 ¶ 21. Also, SUFI engaged in regular negotiations and information exchanges with the CO to execute both the PSA and the ill-fated October 2006 Agreement. Finally, SUFI subjected its monetary claims to a Defense Contract Audit

---

[9]   The Government cites Singer Co. v. United States for the proposition that "requests for equitable adjustment [are] not performance-related" and bear "no beneficial nexus either to contract production or to contract administration." 568 F.2d 695, 721 (Ct. Cl. 1977) (per curiam). The Court rejects the applicability of this proposition in this case. First, unlike in Singer, where the Government's underlying liability was uncertain, the AFNAFPO materially breached its contract with SUFI. Second, as the Bill Strong court recognized, see 49 F.3d at 1547-49, the Defense Procurement Improvement Act, Pub. L. No. 99-145, § 911 (1985), superseded the above language from Singer and the subsequent cases that relied upon it. Instead, an REA satisfies the "benefit to the Government requirement" if it furthers negotiation or information exchange with the agency. See Bill Strong, 49 F.3d at 1549-50.

[10]   Whether SUFI's costs are reasonable, and are allocable to the AFNAFPO's material breach, see FAR § 31.201-2 (2011), is a question best left for the damages stage of the proceedings.

Agency ("DCAA") audit, and SUFI's counsel responded to the DCAA's questions "on several occasions." Pl.'s Mem. (Feb. 13, 2012), at 2 ¶ 2. Thus, as a factual matter, the record is replete with support for SUFI's attorneys' fees claim.

In its attempt to rebut SUFI's *prima facie* case, the Government submits five separate arguments.

First, the Government argues that SUFI already had commenced the prosecution of its monetary claims at the time it prepared its REA. Def.'s Mem. (Mar. 15, 2012), at 19-20. However, as discussed above, (i) claim prosecution did not *per se* commence until SUFI actually appealed its monetary claims to the Board; and (ii) the factual record is filled with instances of negotiation and information exchange at the administrative level sufficient to satisfy Bill Strong.

Second, the Government contends that SUFI negotiated with the CO only to engineer the false appearance of continued contract performance. Def.'s Mem. (Mar. 15, 2012), at 20-21. SUFI, however, executed the October 2006 Agreement, which would have settled ten of its monetary claims. See SUFI ASBCA VIII, at 168,219-21 ¶¶ 13-18, 168,221-22. Executing a settlement agreement is not indicative of a party engaging in sham negotiations.

Third, the Government submits that SUFI deliberately presented the CO with an "oversized" demand for $130,308,071.53 in order "to ensure" its denial and SUFI's subsequent appeal to the Board. Def.'s Mem. (Mar. 15, 2012), at 21. In support of this position, the Government adds that SUFI knew its demand was unrealistic in light of the AFNAFPO's past rejection of an estimated $10.2 million termination for convenience settlement, which SUFI had proposed in August of 2003. Id. at 21 n.10; see also id. at 10 ¶ 6. However, SUFI responds that (i) it provided the proposed settlement estimate only upon the AFNAFPO's request; and (ii) the proposal did not relate to all of SUFI's monetary claims. Pl.'s Mem. (Mar. 29, 2012), at 10. In light of the Government's policy found in FAR § 33.204 (2011), "to try to resolve all contractual issues in controversy by mutual agreement at the contracting officer's level," the Court rejects the Government's position. Penalizing a contractor for a subjectively "oversized" demand, by comparing the demand to a past settlement proposal, would discourage the contractor from proposing early settlement in the first place.

Fourth, the Government notes that SUFI did not wait for a final decision on its monetary claims before appealing to the Board. Def.'s Mem. (Mar. 15, 2012), at 21-22. However, SUFI waited more than six months for the CO to issue a final decision before filing its Board appeal as a deemed denial.

Finally, the Government submits that SUFI's monetary claims "swelled" once before the Board from $130,308,071.53 to $162,124,658.89. Def.'s Mem. (Mar. 15,

2012), at 22; see also id. at 11-12 ¶¶ 16-17.   However, SUFI responds that the $162,124,658.89 figure "include[s] interest, as well as revisions to principal based on record evidence and correction of errors."  Pl.'s Mem. (Mar. 29, 2012), at 11.  The Court finds SUFI's explanation credible and, therefore, rejects this argument as well.

For the foregoing reasons, SUFI's attorneys' fees claim involves compensable contract administration costs within the meaning of Bill Strong.

D.   The FAR Does Not Control but Provides Necessary Guidance in Applying the Common Law Test That Does Control.

"Because this is a non-appropriated funds contract, the common law applies without modification by the FAR."  Pl.'s Mem. (Feb. 13, 2012), at 5; see also FAR §§ 1.104, 2.101 (2011).  Under the common law, attorneys' fees are compensable if they are "a direct and foreseeable consequence" of the Government's "breach of its contractual undertakings."  Mass. Bay Transp. Auth. v. United States ("MBTA"), 129 F.3d 1226, 1232-33 (Fed. Cir. 1997) (Newman, J.); Pratt v. United States, 50 Fed. Cl. 469, 482-83 (2001) (collecting citations); but see Def.'s Mem. (Apr. 9, 2012), at 11 (limiting MBTA to its facts); Def.'s Mem. (Mar. 15, 2012), at 33 (limiting Pratt to its facts).

Notwithstanding the above, the FAR is highly relevant "as a guide" "in the absence of other guidance."  SUFI ASBCA VIII, at 168,289; In re Reidhead Bros. Lumber Mill, AGBCA No. 2000-126-1, 01-2 BCA ¶ 31,486, at 155,442 (Jun. 29, 2001). In their briefs, both parties apply the common law's MBTA/Pratt test almost exclusively by analyzing FAR § 33.205-47(f)(1) and the Bill Strong case that interpreted it.  See Def.'s Mem. (Apr. 9, 2012), at 5-6; Pl.'s Mem. (Mar. 29, 2012), at 9-10; Def.'s Mem. (Mar. 15, 2012), at 18-23, 31; Pl.'s Mem. (Feb. 13, 2012), at 5-9.  Similarly, in SUFI ASBCA VIII, the Board analyzed SUFI's analogous employee claim exclusively under FAR § 33.205-47(f)(1) and Bill Strong.  See SUFI ASBCA VIII, at 168,289-92; Pl.'s Mem. (Mar. 29, 2012), at 11; Def.'s Mem. (Mar. 15, 2012), at 13 ¶ 21.

Moreover, the FAR would apply if the AFNAFPO were not a NAFI.  In light of the Federal Circuit's recent decision in Slattery v. United States, that distinction has become markedly less meaningful.  See 635 F.3d 1298, 1321 (Fed. Cir. 2011) (en banc) (dispensing with prior jurisprudence distinguishing between NAFIs and entities receiving appropriated funds for jurisdictional purposes).

Accordingly, the FAR does not control the instant dispute.  Nevertheless, it provides the Court with necessary guidance in applying the common law's MBTA/Pratt test that does control.  The Court thus holds that SUFI's attorneys' fees claim is "a direct and foreseeable consequence" of the AFNAFPO's material breach.

<u>Conclusion</u>

For the foregoing reasons, the Court rejects both parties' preclusion arguments pertaining to <u>SUFI ASBCA VIII</u>.  Upon *de novo* review, the Court holds there is no genuine dispute that SUFI is entitled to its attorneys' fees claim as an equitable adjustment.   Therefore, the Court GRANTS SUFI's February 13, 2012 motion for summary judgment on liability and DENIES the Government's March 15, 2012 cross-motion for summary judgment.  The parties are requested to submit a joint status report on or before Monday, July 2, 2012 describing their proposed procedures and schedule for resolving the damages portion of this case.

IT IS SO ORDERED.

<u>s/Thomas C. Wheeler</u>
THOMAS C. WHEELER
Judge