# In the United States Court of Federal Claims

No. 11-453C

(Filed: December 7, 2015)

| | | |
|---|---|---|
| ******************************************* | * | |
| SUFI NETWORK SERVICES, INC., | * | |
| | * | |
| | * | Claim for Overhead and Profit as a |
| Plaintiff, | * | Mark-up on Recovery of Attorneys' |
| | * | Fees; Start Date for Running of |
| v. | * | Interest on Attorneys' Fees and |
| | * | Expenses; Proposed Change in |
| THE UNITED STATES, | * | Method for Determining Attorneys' |
| | * | Fees. |
| Defendant. | * | |
| | * | |
| ******************************************* | * | |

*Frederick W. Claybrook, Jr.,* with whom was *Brian T. McLaughlin,* Crowell & Moring LLP, Washington, D.C., for Plaintiff.

*Douglas T. Hoffman,* with whom were *Benjamin C. Mizer,* Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.,* Director, and *Steven J. Gillingham,* Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

This case is before the Court on remand from the U.S. Court of Appeals for the Federal Circuit. SUFI Network Servs., Inc. v. United States, 785 F.3d 585 (Fed. Cir. 2015). In the decision reviewed on appeal, this Court had awarded attorneys' fees to SUFI with interest, but had denied SUFI's request for overhead and profit on attorneys' fees. SUFI Network Servs., Inc. v. United States, 113 Fed. Cl. 140 (2013). The Federal Circuit affirmed this Court's award to SUFI of $697,702.50 in attorneys' fees and $25,486.81 in expenses, but vacated and remanded this Court's ruling with respect to interest, overhead, and profit. SUFI, 785 F.3d at 595. The parties have briefed these issues on remand. Oral argument is unnecessary.

In considering SUFI's cross-appeal for recovery of overhead and profit, the Federal Circuit observed that "[u]nder applicable common law, damages for breach of contract should place the wronged party in as good a position as it would have been had the breaching party fully performed." Id. at 594 (citing Mass. Bay Transp. Auth. v. United States, 129 F.3d 1226, 1232 (Fed. Cir. 1997)). The Federal Circuit concluded that "we vacate the trial court's denial of overhead and profit and remand with instructions that the trial court apply law consistent with this opinion." Id. at 595. The Federal Circuit thus left it to this Court to determine, based upon the common law of damages, whether and to what extent SUFI should recover overhead and profit on its attorneys' fees claim.[1]

Discussion

This case is part of a much larger series of administrative appeals and breach of contract actions spanning ten years of litigation, in which there have been thirteen decisions from the Armed Services Board of Contract Appeals ("ASBCA"), five decisions from this Court, and two appeals to the Federal Circuit.[2] One additional appeal concerning the finality of the ASBCA's February 3, 2015 decision on the merits is still pending before the Federal Circuit. SUFI CFC V, 122 Fed. Cl. 257 (2015), appeal filed, No. 11-804 (Sept. 24, 2015). The overall dispute stems from a planned fifteen-year contract to provide long-distance telephone services in the lodging guest rooms on Air Force bases in Germany. The contracting parties were SUFI and the Air Force Non-Appropriated Funds Purchasing Office ("Air Force"). The contract was cut short by the Air Force's material breaches of contract.

---

[1] SUFI's assertion that the Federal Circuit mandated the award of overhead and profit on attorneys' fees to SUFI is incorrect. See Pl.'s Oct. 19, 2015 Br. at 1 (citing SUFI Network Servs., Inc. v. United States, 785 F.3d 585, 594-95 (Fed. Cir. 2015)). The Federal Circuit's mandate simply requires this Court to review the issue again by applying principles of common law damages instead of the Federal Acquisition Regulation.

[2] The ASBCA's thirteen reported opinions are referred to as "SUFI ASBCA I" through "SUFI ASBCA XIII". Likewise, the previous opinions in this case, No. 11-453, and its related case, No. 11-804C, are referred to, in chronological order, as "SUFI CFC I" through "SUFI CFC V." SUFI ASBCA I, ASBCA No. 54503, 04–1 BCA ¶ 32606 (Apr. 22, 2004); SUFI ASBCA II, ASBCA No. 54503, 04–2 BCA ¶ 32714 (Aug. 17, 2004); SUFI ASBCA III, ASBCA No. 54503, 04–2 BCA ¶ 32788 (Nov. 1, 2004); SUFI ASBCA IV, ASBCA No. 55306, 06–2 BCA ¶ 33444 (Nov. 8, 2006); SUFI ASBCA V, ASBCA No. 55306, 07–1 BCA ¶ 33485 (Feb. 7, 2007); SUFI ASBCA VI, ASBCA No. 55306, 07–1 BCA ¶ 33535 (Mar. 21, 2007); SUFI ASBCA VII, ASBCA No. 55948, 08–1 BCA ¶ 33766 (Jan. 9, 2008); SUFI ASBCA VIII, ASBCA No. 55306, 09–1 BCA ¶ 34018 (Nov. 21, 2008); SUFI ASBCA IX, ASBCA No. 55306, 09–2 BCA ¶ 34201 (Jul. 15, 2009); SUFI ASBCA X, ASBCA No. 55306, 10–1 BCA ¶ 34327 (Dec. 14, 2009); SUFI ASBCA XI, ASBCA No. 55306, 10–1 BCA ¶ 34415 (Apr. 5, 2010); SUFI ASBCA XII, ASBCA No. 55306, 15-1 BCA ¶ 35,878 (Feb. 2, 2015); SUFI ASBCA XIII, ASBCA No. 55306, 15-1 BCA ¶ 35,992 (May 20, 2015); SUFI CFC I, 102 Fed. Cl. 656 (2012); SUFI CFC II, 105 Fed. Cl. 184 (2012); SUFI CFC III, 108 Fed. Cl. 287 (2012), aff'd in part, rev'd in part, 755 F.3d 1305 (2014); SUFI CFC IV, 113 Fed. Cl. 140 (2013), aff'd in part, vacated in part, 785 F.3d 585 (2015); SUFI CFC V, 122 Fed. Cl. 257 (2015), appeal filed, No. 11-804 (Sept. 24, 2015); SUFI Network Servs., Inc. v. United States, 755 F.3d 1305 (Fed. Cir. 2014); SUFI Network Servs., Inc. v. United States, 785 F.3d 585 (Fed. Cir. 2015).

A. <u>Overhead and Profit on Attorneys' Fees</u>

Cumulatively, SUFI has succeeded in its quest to be compensated for the Air Force's breaches, including the recovery of lost profits and overhead caused by the Air Force's conduct. In the breach damages award exceeding $110 million, SUFI established its entitlement to more than $58 million in lost profits. SUFI also received overhead compensation relating to its performance of extra work under the contract. The issue now remaining is whether SUFI should receive additional profit and overhead as a mark-up on the attorneys' fees of its outside law firm, Crowell & Moring.

SUFI contends that it should receive a 25 percent profit on Crowell & Moring's attorneys' fees, based upon two provisions included in Modification 007 to the contract, dated February 18, 2000. These two provisions state as follows:

> 3.11.1 "Additional Work Requested"
>
> Additional work requested by the LFM [Lodging Facilities Manager] not specified in the contract will be the responsibility of the Lodging operation to fund. This pertains to items such as office moves, additional phones, and other requests not covered under this contract. The LFM must submit a request for proposal to the Contractor specifying the work to be accomplished and the time frame required. The Contractor will respond within 15 duty days and provide a technical proposal and cost proposal of no more than 25% over cost to the Lodging Manager and [Air Force] at no additional charge to the government.
>
> 3.11.2 "Facility Renovations"
>
> The LFM must notify the contractor before an existing building is scheduled for renovation so the contractor may remove any existing telephones, frames, and other equipment. The LFM must notify the contractor 60 days in advance for a major renovation (i.e. and [sic] entire building) and 30 days in advance for a minor renovation (i.e., individual rooms or floors. Contractor shall submit a proposal of no more than 25% over cost to LFM and [Air Force] in three separate areas: 1) removal of equipment prior to renovation; 2) cost of reinstalling the system temporarily based on LFM requirements during renovation if so desired; 3) and full reinstallation of phone system when the building is ready again

>       for occupancy.  [Air Force] and SUFI Network Service will
>       work together on a fair and reasonable cost plus price that is
>       agreeable to both parties prior to the start of any work.

(PX 58 at 1-2.)

These contract provisions on their face do not apply to SUFI's claim for recovery of attorneys' fees, and would not justify a mark-up on attorneys' fees.  Neither section 3.11.1 nor 3.11.2 references anything about attorneys' fees or legal costs.  Based upon the plain language of the clauses, they apply to "office moves, additional phones, and other requests [from the government] not covered under this contract," as stated in clause 3.11.1, and to "major" and "minor" renovations requiring the removal of "existing telephones, frames, and other equipment," as stated in clause 3.11.2.

Logic would support a distinction between contract performance work managed by SUFI under sections 3.11.1 and 3.11.2, and legal work managed and performed by SUFI's outside law firm.  A negotiated profit and overhead rate would be entirely appropriate for SUFI's contract work, and indeed SUFI received this compensation as a mark-up on its claims.  However, the Court is not aware of any contractual basis to grant SUFI a 25 percent mark-up on legal work performed by Crowell & Moring.  Such a mark-up would have the effect of increasing Crowell & Moring's hourly billing rates by 25 percent for no apparent reason.  SUFI does not cite any other contract provision supporting its claim for overhead and profit on fees.

Lacking any contractual basis for recovery, the Court will turn to the elements for establishing recovery under the common law of damages.  Common law breach of contract damages "are recoverable where:  (1) the damages were reasonably foreseeable by the breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty."  Sys. Fuels, Inc. v. United States, 666 F.3d 1306, 1311 (Fed. Cir. 2012) (citing Ind. Mich. Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005)).  Examining SUFI's claim for a profit and overhead mark-up on Crowell & Moring's attorneys' fees, the Court finds that SUFI does not satisfy any of these three criteria.

First, looking to the foreseeability that a breaching party would expect to be charged for profit and overhead on top of attorneys' fees, the Court does not see any circumstances under which such a mark-up would be foreseeable.  Profit normally is viewed as a reward for having assumed a business risk of some kind.  See Howard O. Hunter, Modern Law of Contracts § 14:10 (2015).  Here, SUFI did not assume any risk in having an outside law firm prepare a contract claim on a contingent fee basis.  If the claim were successful, as this one was, SUFI would receive a large sum from the Government, and it would owe the law firm an agreed percentage for the law firm's efforts.  If the claim was not successful, SUFI presumably would not owe the law firm anything, except

4

perhaps for expenses.[3]  There is no risk to SUFI in this arrangement, and thus no basis for the breaching party to believe that SUFI should receive a profit on top of the legal fees.

Compensation for overhead seemingly would be appropriate if SUFI had played some role, and had expended some time and effort, in assisting or overseeing the law firm's claim-preparation tasks.  However, there is no evidence that SUFI played any significant role in this process.  Given the contingent fee arrangement with Crowell & Moring, SUFI would have no reason or interest to oversee or manage the law firm's work.  This was a case of a novice government contractor turning over the complete claim preparation work to an experienced and highly reputable law firm.  Where SUFI did not add anything material to the claim preparation effort, it is difficult to understand why SUFI should receive an overhead component.  The Air Force, as the breaching party, would not have found it foreseeable to pay SUFI overhead for not doing any material work.

Second, in assessing whether the breach of contract is a substantial causal factor for the claimed damages, the Court is simply unable to identify any damages.  As noted above, the Court does not see that the Air Force's breach caused SUFI to lose any profit or overhead relating to the law firm's preparation of the claim.  Simply put, the record does not support a finding that any profit or overhead damages relating to attorneys' fees even exist.  SUFI already has received rulings awarding lost profits and overhead as part of its breach of contract claim.  Thus, the breach of contract did not cause any additional damages.

Third, in deciding whether SUFI has shown damages with reasonable certainty, the only result the Court can reach with reasonable certainty is that no additional overhead and profit are warranted.  It stands to reason that where the Court is unable to identify any damages, those damages cannot be shown with reasonable certainty.  The record shows that SUFI did not perform any of the work and did not incur any risk justifying a profit.  Therefore, SUFI has failed to establish any overhead or profit damages with reasonable certainty.  Further, the Court is not aware of any precedent supporting an overhead and profit mark-up on an outside law firm's fees, and the parties have provided none.

Accordingly, applying the common law of breach of contract damages, SUFI is not entitled to any mark-up for overhead and profit on its law firm's attorneys' fees.

---

[3] SUFI has not produced its contingent fee agreement with Crowell & Moring, ostensibly on attorney-client privilege grounds, and thus the agreement is not part of the evidentiary record.  The Court cannot determine what the terms of the contingent fee agreement may be, a fact that is neither helpful nor hurtful to SUFI's claim.  However, if the agreement had been helpful in some respect, presumably SUFI would have produced it.

B. Interest

The parties disagree on the date when interest should begin to run for attorneys' fees, and whether the application of interest on expenses is still an open issue. Since Crowell & Moring handled this matter on a contingent fee basis, SUFI received no legal bills and incurred no liability for attorneys' fees as the work was being performed. Indeed, it is doubtful that as of today SUFI has paid anything to Crowell & Moring for attorneys' fees because the Air Force's obligation for breach damages to SUFI is not final. The Government contends and the Court agrees that the earliest date of interest accrual would be December 29, 2010, the date that SUFI submitted its claim for fees and expenses to the contracting officer. Def.'s Nov. 9, 2015 Br. at 16-17. The date of the claim is the time that SUFI formally put the Air Force on notice that payment of a sum certain would be expected. Every day thereafter represents a day that SUFI was denied the use of the funds. Therefore, starting interest on the date of claim submittal is a reasonable outcome, and would be in line with the treatment of interest under the Contract Disputes Act, 41 U.S.C. § 7109(a) (2011). Although this case is not governed by the Contracts Disputes Act, the parties likely would accept such a result as being typical in federal procurement law.

With regard to the running of interest on expenses, the Court agrees with SUFI that the Government has waived the right to challenge the Court's original judgment. Pl.'s Oct. 19, 2015 Br. at 4-6. The Government did not appeal this Court's ruling relating to interest on expenses, and therefore the original ruling remains undisturbed. See SUFI IV, 113 Fed. Cl. 140 (2013).

C. Proposed Change in Presenting Attorneys' Fees Claim

SUFI has recently raised for the first time that its attorneys' fees calculation should be based on the amount it is required to pay Crowell & Moring under the contingent fee agreement, rather than using the traditional lodestar method previously presented. Pl.'s Oct. 19, 2015 Br. at 7-10. As the Government points out, SUFI presented a traditional lodestar method of rates multiplied by hours in its claim to the contracting officer, in its complaint, in pretrial filings, during the trial, and on appeal to the Federal Circuit. Def.'s Nov. 19, 2015 Br. at 19-28. During the entire trial, and the discovery leading up to trial, the parties focused on the reasonableness of the attorneys' hourly rates and the amount of time spent.

At no time until now has SUFI argued for the recovery of fees based upon its contingent fee agreement. This 180 degree reversal has occurred despite the fact that SUFI has refused to produce the contingent fee agreement with Crowell & Moring. SUFI itself strongly asserted in a February 13, 2012 motion for summary judgment that "contingent fee arrangements between the client and the attorney are to be disregarded when setting the appropriate fee. . . ." Pl.'s Mot Summ. J. at 11. SUFI relied upon Supreme Court precedent that a plaintiff may not recover an amount pursuant to a

contingent fee agreement. Id. (citing City of Burlington v. Dague, 505 U.S. 557, 562-63 (1992) (rejecting supplement to lodestar method due to contingent fee arrangement); Blanchard v. United States, 489 U.S. 87, 92-95 (1989) (rejecting the capping of a lodestar award by a contingent fee arrangement). Similarly, SUFI failed to raise its new fee calculation when, in ruling upon cross-motions for summary judgment, this Court extensively discussed the fact that SUFI's contingent fee arrangement did not bar SUFI's recovery of attorneys' fees based upon hourly rates and time spent. SUFI CFC II, 105 Fed. Cl. 184, 192-95 (2012).

The triggering event to SUFI's change of position is that this Court, and later the ASBCA, greatly increased the damages award for the Air Force's breach, and thus greatly increased the amount of the contingent fee that SUFI would pay. Yet, the Court's damages award stems from the SUFI CFC III, decision, issued on November 8, 2012. See 108 Fed. Cl. 287 (2012). SUFI could have raised its alternative theory for recovery of attorneys' fees at any time after that date, but it failed to do so. SUFI could have informed the Federal Circuit of this new position, but it did not. The Government relied upon SUFI's lodestar method of presentation at every step of this case, and now would have to formulate a brand new mode of defense if SUFI were permitted to proceed. Under these circumstances, SUFI is equitably estopped from changing its position. Birkelund v. United States, 135 Ct. Cl. 503, 512-13, 142 F. Supp. 459, 465 (1956).

Finally, the Court doubts that it has subject matter jurisdiction of SUFI's significantly revised claim under the contingent fee agreement because that claim has never been presented to the contracting officer for a final decision. The Court acknowledges that some claims may be revised in litigation without having to be presented to the contracting officer. See, e.g., J.F. Shea Co. v. United States, 4 Cl. Ct. 46, 54 (1983) (permitting revision of claim without submission to contracting officer). In this case, however, an attorneys' fees claim based upon a contingent fee agreement presumably would be a drastically larger claim based upon very different legal theories of recovery. Using typical contingent fee terms (because SUFI has not produced the actual agreement here), a one-third recovery by the law firm could exceed $30 million, as opposed to the $697,702.50 awarded by this Court and affirmed by the Federal Circuit. Such a claim ought to be submitted initially to the contracting officer. This is not a circumstance where plaintiff is correcting an error or adding a new legal basis for recovery.

For all of the foregoing reasons, the Court will not allow SUFI to change its method for recovering attorneys' fees to the amounts due under the contingent fee agreement.

## Conclusion

Within fourteen days, on or before December 21, 2015, the parties shall file a joint status report indicating whether any further proceedings are necessary in this case, and if so, what those proceedings may entail.

IT IS SO ORDERED.

                                                s/Thomas C. Wheeler
                                                THOMAS C. WHEELER
                                                Judge